IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DANIELLE GOODMAN,                          )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )        1:24-cv-868 (LMB/IDD)
                                           )
IKEA US RETAIL, LLC,                       )
                                           )
          Defendant.                       )

<u>MEMORANDUM OPINION</u>

Acting <u>pro se</u>, plaintiff Danielle Goodman ("plaintiff") has filed a 12-count Complaint

against her former employer IKEA US Retail, LLC ("IKEA" or "defendant") in which she

alleges the following 12 claims against the defendant: race discrimination (Count One) and

retaliation (Count Two) in violation of Title VII, 42 U.S.C. § 2000e-3(a); race discrimination

(Count Three) and retaliation (Count Four) in violation of 42 U.S.C. § 1981; defamation (Count

Five); breach of contract (Count Six); conspiracy to interfere with civil rights in violation of 42

U.S.C. § 1985 (Count Seven); neglect to prevent in violation of 42 U.S.C. § 1986 (Count Eight);

violation of Virginia's Human Rights Act § 2.2-3900 (Count Nine); business conspiracy in

violation of Va. Code § 18.2-499 (Count Ten); civil conspiracy in violation of Virginia common

law (Count Eleven); and intentional infliction of emotional distress (Count Twelve). [Dkt.

No. 1] ("Compl.") at 23–42. Plaintiff seeks injunctive relief along with compensatory, punitive,

and liquidated damages. <u>Id.</u>

Defendant has filed a Partial Motion to Dismiss Counts One, Five, Six, Seven, Eight,

Nine, Ten, Eleven, and Twelve of the Complaint with prejudice, and to dismiss Counts Three

and Four to the extent they rely on untimely allegations. [Dkt. No. 11] ("Motion"). In

opposition, plaintiff argues that the Complaint adequately alleges each cause of action and that Counts Three and Four were timely filed. Defendant has filed a reply brief and the parties have waived oral argument. For the reasons that follow, defendant's Motion will be granted.

## I. BACKGROUND

According to the Complaint, plaintiff, a Black woman, worked at defendant's Woodbridge, VA location from November 2015 through January 2022. [Dkt. No. 1] ("Compl.") at ¶ 18. Although plaintiff held various positions during this time, the alleged misconduct occurred from mid-2017 through January 2022, while she served as the Site Admin Coordinator in the Risk and Compliance Department. Id. at ¶¶ 18, 21, 26. Beginning in early 2017, plaintiff became a member of the Coworker Engagement Committee and was "vocal about her pride of her Black heritage and culture and support and furtherance of Black equality and issues at the store." Id. ¶ 24.

In mid-2017, the defendant experienced a "major company reorganization called O4G, and as a result, the Risk and Compliance Department fell under a new Operations Manager, Michelle Chenard" ("Chenard"). Id. at ¶ 25. During this time, plaintiff was "knowledgeable, efficient, and productive, and she carried the brunt of the workload for the Site Admin Department." Id. at ¶ 27. In her final performance review in October 2021, plaintiff's manager Ronda Knight ("Knight") lauded plaintiff's efficiency. Id. at ¶ 29.

The Complaint alleges that "[p]rior to early 2017, [plaintiff] experienced positive employment actions. After mid-2017, [plaintiff] experienced negative employment actions and disparate treatment." Id. at ¶ 27. After the reorganization, plaintiff "experienced inconsistent expectations and unequal treatment from management in contrast to the other non-Black Site

Admin coworkers." Id. at ¶ 29.  Her wages were reduced by about $8 per hour, which she

reported to the Human Resources ("HR") business partner, who then informed her that this pay

cap affected all departments equally.  Id. at ¶ 31.

In 2018, plaintiff took parental leave following the birth of her child.  Rick Singleton

("Singleton"), a Black coworker in the Risk and Compliance department, was the father of her

child.  Id. at ¶ 32.  In the fall of 2019, after her return from maternity leave, plaintiff was given a

"retaliatory corrective action" after she reported misconduct by Chenard.  Id. at ¶ 33.  Plaintiff

complained about this retaliatory conduct, and, as a result, upper management rescinded the

corrective action from plaintiff's personnel file.  Id. at ¶ 33.

Once the COVID-19 pandemic began in 2020, employees at defendant's Woodbridge

store were furloughed.  Plaintiff and Singleton, who were the only Black Risk and Compliance

workers, were recalled "after everyone else in the department" and were also the only coworkers

in the department "to be put on deferment before they were able to return to work."  Id. at ¶ 34.

In March 2021, Chenard provided a PowerPoint training on guidelines she was

introducing regarding relationships between managers and coworkers.  Id. ¶ 37.  Later in the

spring of 2021, a white relative of Risk and Compliance Team Lead Heidi Becker was hired and

became her direct report.  Id. ¶ 38.

In the spring of 2021, plaintiff interviewed for a full-time HL3 Site Admin position (she

had previously been an HL2).  Id. at ¶ 43.  Plaintiff was given this position and was supposed to

receive full-time pay for 40-hour weeks like the other HL3 coworkers in the Risk and

Compliance Department, but she received fewer hours.  Id. at ¶ 44.  After plaintiff made repeated

requests to receive adequate hours, she finally received a 40 hours per week schedule.  Id. at ¶

45.

In August 2021, an HR manager negligently emailed a confidential HR spreadsheet which contained each employee's pay.  Plaintiff reviewed the spreadsheet and discovered that she was being paid less than the non-Black employees in her department.  Id. at ¶ 46.  As a result, in September 2021, plaintiff filed an "inquiry" with the EEOC regarding the pay cap she was subjected to "following the general dissemination of her Black heritage in the Coworker Engagement [C]ommittee in early 2017."  Id. at ¶ 56.

On October 26, 2021, plaintiff received a positive performance review from the Risk and Compliance manager, Knight.  During this time, neither Knight nor Chenard made any comments to plaintiff about her breaking defendant's policy or guidelines regarding her relationship with Singleton, id. at ¶ 59; however, at some unidentified time(s), plaintiff was subjected to "constant micromanagement," in contrast to the non-Black Site Admins.  Id. at ¶ 110.

In November 2021, plaintiff filed a charge of discrimination with the EEOC alleging race discrimination based on the pay disparity she had discovered.  Id. at ¶ 63.  Defendant received notice of plaintiff's charge on November 26, 2021.  Id. at ¶ 64.  The EEOC dismissed plaintiff's charge in December 2021, allegedly without investigation.  Id. at ¶ 68.

According to the Complaint, after the dismissal of her EEOC charge, plaintiff "began experiencing immediate and continuous retaliation from her direct manager, Ms. Knight, through upper management."  Id. at ¶ 69.  For example, Knight "stopped answering any radio or phone calls made by [plaintiff]."  Id. at ¶ 70.  Also in December 2021, management scheduled a meeting with plaintiff in which they informed plaintiff that her relationship with Singleton was a "conflict of interest," and that plaintiff had been "concealing" her relationship.  Id. at ¶ 75.  Plaintiff again met with management in January 2022 regarding a possible investigation into

plaintiff's "conflict of interest." During that meeting, management informed plaintiff that the investigation would take six months and that "termination was not on the table." Id. at ¶ 80. Following both meetings, plaintiff never received any disciplinary actions, discussions, or write ups before the day of her termination. Id. at ¶ 82. Moreover, management "failed to provide an investigation as agreed." Id. at ¶ 83.

On January 21, 2022, one month after the EEOC charge was dismissed, plaintiff was fired, allegedly "in retaliation for [plaintiff] engaging in protected activity by filing an EEOC charge against IKEA." Id. at ¶ 88. According to the Complaint, "IKEA has admitted that the basis for [plaintiff's] termination was information from her EEOC race discrimination charge." Id. at ¶ 89. Moreover, the Complaint alleges that "IKEA continued [its] retaliation against [plaintiff] by appealing the state's decision to give her unemployment benefits, and attempted to have her repay unemployment." Id. at ¶ 95. Ultimately, plaintiff continued to receive her unemployment benefits until she was able to find a new employer. Id. ¶ 96.

Plaintiff filed a retaliation inquiry with the EEOC in January 2022 following her termination, and the charge was officially filed in May 2022. She received a right to sue letter from the EEOC on February 27, 2024. Id. at ¶ 13.

## II. ANALYSIS

### A. Standard of Review

In considering a Rule 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff, and take the facts asserted in the complaint as true. Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 12(b)(6) requires that a complaint be dismissed when it does not "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To survive a motion to dismiss, a complaint

must allege enough facts "to raise a right to relief above the speculative level."  King v.

Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Twombly, 550 U.S. at 555).  "Bare legal

conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim."  Id.

(quoting Iqbal, 556 U.S. at 679).  Even though pro se complaints are to be construed liberally, a

pro se plaintiff's complaint must still state a claim for relief that is plausible on its face.  Thomas

v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016).

### B.  Race Discrimination under Title VII (Count One)

To maintain a Title VII claim, an aggrieved employee is required to file suit within 90

days after receipt of the notice of right to sue from the EEOC.  42 U.S.C. § 2000-5(f)(1).

Defendant argues that plaintiff's claim of race discrimination under Title VII should be

dismissed because it is untimely.  Motion at 3.  Plaintiff filed a charge with the EEOC in

November 2021, in which she alleged discrimination on the basis of her race.  She received a

notice of right to sue for that charge on December 1, 2021; however, she filed this Complaint on

May 23, 2024, more than two years after receiving the notice.  Therefore, Count One is untimely

and will be dismissed.  See Boyce v. Fleet Fin., Inc., 802 F. Supp. 1404, 1411 (E.D. Va. 1992)

(dismissing Title VII claims where the complaint was filed ninety-two days after receipt of the

right-to-sue notice).

### C.  Race Discrimination (Count Three) and Retaliation (Count Four) under § 1981

To allege a prima facie case of discriminatory employment practices under § 1981, a

complaint must allege (1) the plaintiff's membership in a protected class; (2) an adverse

employment action taken against the plaintiff; (3) that at the time of the adverse employment

action, the plaintiff was meeting her employer's legitimate expectations; and (4) that the adverse

employment action "occurred under circumstances giving rise to an inference of unlawful

discrimination." Swaso v. Onslow Cnty. Bd. of Educ., 698 Fed. App'x 745, 748 (4th Cir. 2017) (quoting Adams v. Tr. of Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011)). The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

To raise a prima facie case of retaliation, a complaint must allege "(1) that [the plaintiff] engaged in protected activity, (2) that her employer took adverse action against her, and (3) that a causal relationship existed between the protected activity and the adverse employment activity." Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 217 (4th Cir. 2016) (cleaned up). "Protected activity under § 1981 includes opposing policies or practices that discriminated against any person on the basis of race." Cepada v. Bd. of Educ. of Balt. Cnty., 974 F.Supp.2d 772, 788 (D. Md. 2013) (internal quotation and citation omitted); see also 42 U.S.C. § 2000e-3(a).

Defendant erroneously argues in its Motion that plaintiff's claims of race discrimination and retaliation under § 1981 should be dismissed to the extent they involve discreet acts dating back more than two years before the filing of the instant action; however, as plaintiff pointed out, the relevant statute of limitations for race discrimination claims under § 1981 is four years. See White, 375 F.3d at 292. In its Reply, defendant acknowledges that the statute of limitations for § 1981 actions is four years;[1] however, it argues that plaintiff's claims are still time-barred to the extent that they rely on facts that occurred more than four years before May 23, 2024, the date the Complaint was filed.

To the extent plaintiff bases her § 1981 claims on acts by IKEA that occurred more than four years before the filing of the Complaint, they are time barred. Specifically, only conduct

---

[1] Defendant erroneously applied the pre-1991 statute of limitations in its Motion.

that occurred after May 23, 2020 is actionable under § 1981. The Complaint alleges that the

following acts occurred before May 23, 2020:[2]

- Plaintiff joined the Coworker Engagement Committee and began being vocal about her Black heritage;[3]

- Plaintiff experienced inconsistent expectations and unequal treatment from Chenard;[4]

- Plaintiff's wages were lowered by approximately $8 per hour; and

- In the fall of 2019, Chenard gave plaintiff a "retaliatory corrective action" after plaintiff reported misconduct by Chenard.

The Complaint alleges that the following acts occurred after May 23, 2020:

- Plaintiff experienced inconsistent expectations and unequal treatment from Chenard;

- Chenard provided a PowerPoint presentation on guidelines regarding relationships between managers and coworkers;

- A white relative was hired and made a direct report of the Risk and Compliance Team Lead;

- Plaintiff was given the HL3 position but not given 40-hour weeks until after plaintiff made repeated requests;

- Plaintiff learned via the negligently emailed HR spreadsheet that she was being paid less than the non-Black employees in her department;

- Plaintiff filed her EEOC inquiry and, later, the charge of discrimination;

---

[2] It is unclear from the allegations in the Complaint when plaintiff was put on deferment after the COVID-related furloughs ended. See Compl. ¶ 34. The Court takes judicial notice of the fact that COVID lockdowns began in mid-March of 2020, but that fact alone does not establish when plaintiff was placed on deferment.

[3] Plaintiff's initial involvement in the committee and her disclosure of her "Black heritage" occurred before May 23, 2020; however, the Complaint alleges that IKEA employees knew of these facts at all relevant times, including after May 23, 2020.

[4] The Complaint does not allege the end date of this conduct. The allegations suggest that the conduct was ongoing; therefore, the Court considers this conduct as occurring both before and after May 23, 2020.

- Plaintiff received a positive performance review from the Risk and Compliance manager;

- Plaintiff was subjected to "constant micromanagement," while non-Black employees were not;[5]

- Plaintiff experienced "immediate and continuous retaliation" from her direct manager, including not answering any radio or phone calls made by plaintiff;

- Management informed plaintiff at a meeting that her relationship with Singleton was a "conflict of interest" but that "termination was not on the table;"

- Management agreed to provide an investigation into plaintiff's relationship with Singleton but failed to do so;

- Defendant terminated plaintiff's employment admittedly "in retaliation for [her] engaging in protected activity by filing an EEOC charge;" and

- Defendant appealed the state's decision to give plaintiff unemployment benefits, and attempted to have her repay unemployment benefits she had already received.

Accordingly, only plaintiff's allegations that defendant reduced her pay by $8 per hour and Chenard's "retaliatory corrective action" in 2019 are time-barred.  Because defendant offers no reasons why the remaining allegations fail to state a § 1981 discrimination or retaliation claim, the Motion will be granted only as to these two allegations—Counts Three and Four will otherwise proceed as amended.

## D. Defamation (Count Five)

To state a claim for defamation under Virginia law, a complaint must allege "1) publication of 2) an actionable statement with 3) the requisite intent." Van Vleck v. Sallyport Glob. Holdings, Inc., 2019 WL 2273845 (E.D. Va. May 28, 2019).  "Under Virginia law, a private figure must make a showing that the defendant 'published the statement knowing

---

[5] The Complaint does not allege the timeframe during which the micromanagement occurred; however, drawing all inferences in favor of plaintiff as is proper at the motion to dismiss stage, "constant" suggests that the conduct was ongoing throughout plaintiff's employment, including after May 23, 2020.

9

that it was false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" <u>Steele v. Goodman</u>, 382 F. Supp. 3d 403, 420 (E.D. Va. 2019) (internal quotation marks and citation omitted).  Defendant argues that the Complaint falls short of alleging an actionable publication required to make out a claim for defamation.  Motion at 4.

The Complaint alleges that IKEA "repeated known fallacies against her conduct and character to investigators at the EEOC and the [Prince William County] Human Rights Commission and when they appealed her unemployment benefits."  It further alleges that these false statements were included in her termination documents and restated during her termination.  These allegations are insufficient to plead publication of an actionable statement.  As an initial matter, statements made in judicial and quasi-judicial proceedings cannot form the basis of a defamation claim under Virginia law.  <u>See, e.g.</u>, <u>Shabazz v. PYA Monarch, LLC</u>, 271 F. Supp. 2d 797 (E.D. Va. 2003) ("Therefore, the court finds that the proceedings before the EEOC were quasi-judicial in nature.  As such, any relevant communications between the defendant and the EEOC are absolutely privileged and may not serve as the basis for this defamation lawsuit."); <u>Shannon v. Hampton Rds. Cmty. Action Program, Inc.</u>, 299 Va. 579, 591 (Va. 2021) (finding that statements made to the Virginia Employment Commission during unemployment hearings were protected by qualified immunity and could not form the basis of a defamation claim).  Similarly, statements made in termination documents are legal insufficient to form the basis of a defamation claim.  <u>See</u> <u>Dwyer v. Smith</u>, 867 F.3d 184, 195 (4th Cir. 1989) (explaining that in Virginia, communications relating to matters of mutual interest and employee investigations into misconduct or discipline are presumptively privileged).  Accordingly, the Complaint does not support a plausible claim for defamation and Count Five will be dismissed.

### E. Breach of Contract (Count Six)

"For a contract to be a legally enforceable obligation, 'there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances.'" Devil's Advocate, LLC v. Zurich Am. Ins. Co., No. 1:13-cv-1246, 2014 WL 5161197, at *5 (E.D. Va. Oct. 10, 2014) (quoting Allen v. Aetna Cas. & Sur. Co., 281 S.E.2d 818, 820 (Va. 1981)). Defendant argues that plaintiff's breach of contract claim fails because she has not pleaded the existence of a legally enforceable obligation.

Even reading the Complaint in the most generous terms, it is unclear what sort of contract Plaintiff is alleging—what was the offer, the acceptance, or the consideration. "In Virginia, an employment relationship is presumed to be at-will . . . and may be terminated by the employer or employee for any reason upon reasonable notice." Giles v. Wines, 546 S.E.2d 721, 723 (Va. 2001). The Complaint fails to allege any facts that would suggest that plaintiff had a written employment contract with IKEA. As an at-will employee, her employment relationship with defendant could be ended at any time.[6] See Norfolk S.R. Co. v. Harris, 59 S.E 2d 110, 114 (Va. 1950) ("It is settled doctrine in [Virginia] that where no specific time is fixed for the duration of an employment, there is a rebuttable presumption that it is an employment at will, terminable at any time by either party."). For these reasons, the Complaint's breach of contract will be dismissed.

### F. Conspiracy to Interfere with Civil Rights (Count Seven) and Neglect to Prevent

---

[6] In her opposition, plaintiff argues that "[l]aw provides general contracts between citizens," and because IKEA's policies "restate that they will abide by the applicable employment laws," they breached a contract with plaintiff by breaching "both the state and federal laws." [Dkt. No. 16] at 3. This is not a correct statement of contract law and fails to establish an enforceable contract between plaintiff and defendant.

### (Count Eight) under 42 U.S.C. § 1985

"An action under section 1985(3) consists of these essential elements: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus, to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985).  Defendant argues that "[p]laintiff's § 1985 claim fails because (1) a corporation cannot conspire with its own agents under the doctrine of int[ra]corporate[7] immunity and (2) Plaintiff does not allege facts sufficient to demonstrate that IKEA conspired with the Prince William County Human Rights Commission."  Motion at 9.

Defendant's argument is correct.  The Complaint fails to allege sufficient facts to demonstrate a conspiracy between IKEA and the Prince William County Human Rights Commission.  To support such a claim, a complaint must allege facts showing "that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." Strickland v. United States, 32 F.4th 311, 360–61 (4th Cir. 2022) (internal citation omitted).  Here, the Complaint alleges (1) IKEA and the Prince William County Human Rights Commission are both members of the Prince William Chamber of Commerce, (2) IKEA hosted Chamber events, (3) members of the Prince William County Human Rights Commission denied knowledge of membership in the Chamber and of connection to IKEA, and (4) the Prince William County Human Rights Commission adopted IKEA's

---

[7] Defendant erroneously writes "intercorporate immunity," but Buschi clearly (and only) discusses intracorporate immunity, which is the relevant issue for Counts Seven and Eight.

12

position "while they lacked the hard evidence required to provide a fair assessment of the allegations."

The Complaint does not allege a single concrete fact to make out a plausible claim that IKEA and the Prince William County Human Rights Commission "conspired or participated in any joint plan" to deprive her of her rights. Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Simply put, membership in a regional chamber that seeks to encourage economic development in the area is insufficient to demonstrate conspiracy in a joint plan. For these reasons, Counts Seven and Eight will be dismissed.

### G. Violation of Virginia Human Rights Act ("VHRA") § 2.2-3900 (Count Nine)

The Virginia Human Rights Act ("VHRA") outlaws discriminatory conduct, including, as relevant to this action, discrimination in employment on the basis of an employee's race. Va. Code § 2.2-3905(B)(1)(a). Section 2.2-3907 "prescribes an extensive remedial scheme that employees must follow when relying on the rights and polices articulated in the Act." Jordan v. Sch. Bd. of the City of Norfolk, 640 F. Supp. 3d 431, 448. Specifically, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice may file a complaint . . . with the Office of Civil Rights of the Department of Law (the Office)." Va. Code § 2.2-3907(A). "Within the Office, the Division of Human Rights (FEPA) oversees the VHRA." Jordan, 640 F. Supp. 3d at 447. "There is no ambiguity in this statutory text: only the state agency can notify a complainant of their right to sue under state law. The EEOC lacks such authority." Tattrie v. CEI-Roanoke, LLC, No. 7:23-cv-079, 2023 WL 4186383, at *3 (W.D. Va. June 26, 2023). Defendants argue that plaintiff's VHRA claim is procedurally defective because she did not meet the VHRA requirement that a claimant must obtain a right-to-sue notice from FEPA before filing a state law claim of employment discrimination. Motion at 14. Plaintiff does not dispute defendant's argument that she did not receive a right to sue letter from the state agency but contends that

13

because her EEOC complaint was handled by the Prince William County Human Rights Commission, she can sue under Virginia state law. Her argument is legally defective.

The EEOC's notice of right to sue language only applies to lawsuits under federal law. That the EEOC has arrangements with a local human rights commission to investigate federal employment discrimination claims does not mean that state human rights issues were also investigated. IKEA did not receive any notice of claims being investigated pursuant to the VHRA. Accordingly, plaintiff's "VHRA claim is procedurally defective because she has not met the VHRA requirement that a claimant obtain a right-to-sue notice from FEPA prior to filing her state law claim." Jordan, at 640 F. Supp. 3d at 447. Accordingly, Count Nine will be dismissed.

### H. Business Conspiracy (Count Ten)

To put forth a prima facie case for business conspiracy, a complaint must allege that "(1) [the defendants] agreed or conspired with another party or parties; (2) the conspirators acted with legal malice, that is, acted intentionally, purposefully, and without lawful justification; and (3) the intentional actions of the conspirators proximately caused injury to [the plaintiff]." Field v. GMAC LLC, 660 F. Supp. 2d 679, 688–89 (E.D. Va. 2008). Defendants argue that neither of plaintiff's allegations—that "IKEA and the [Prince William County] Human Rights Commission conspired to prevent a fair investigation into [her] EEOC charge" and that IKEA "condoned" a conspiracy among upper management—is sufficient to sustain a claim for business conspiracy under Virginia law. [Dkt. No. 11] at 14.

As previously discussed, the Complaint does not allege sufficient facts to make a plausible claim that IKEA and the Prince William County Human Rights Commission agreed to or acted with legal malice. Moreover, condoning a conspiracy among upper management fails as a matter of law to demonstrate a conspiracy on the part of IKEA because of the intracorporate

immunity doctrine, which provides that a corporation cannot conspire with its own employees. Furthermore, plaintiff's "broad allegations provide no factual basis to discern the method of the alleged conspiracy or how it was carried out." Harper Hardware Co. v. Powers Fasteners, Inc., No. 3:05-cv-799, 2006 WL 141672, at *5 (E.D. Va. Jan. 19, 2006). Because claims under Va. Code § 18.2-499 "must be pleaded with particularity, and with more than 'mere conclusory language,'" Gov't Emps. Ins. Co. v. Google, Inc., 330 F.Supp.2d 700, 706 (E.D. Va. 2004) (quoting Bay Tobacco LLC v. Bell Quality Tobacco Prods., LLC, 261 F.Supp.2d 483, 499 (E.D. Va. 2003), Count Ten will be dismissed.

### I.  Civil Conspiracy (Count Eleven)

"Under Virginia law, the elements of a common law civil conspiracy are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." William v. AES Corp., 28 F.Supp.3d 553, 574 (E.D.Va.2014). There must also be an underlying tort committed as part of the conspiracy. Id. Defendant correctly argues that none of the substantive torts alleged by plaintiff—defamation and intentional infliction of emotional distress—are properly pleaded so as to survive a motion to dismiss. Because, as explained elsewhere in this Memorandum Opinion, neither defamation (Count Five) nor Intentional Infliction of Emotional Distress (Count Twelve) have been adequately pleaded, Count Eleven will be dismissed.

### J.  Intentional Infliction of Emotional Distress (Count Twelve)

To successfully plead intentional infliction of emotional distress, a complaint must allege that: (1) the defendant intended the conduct or had a reckless disregard for whether the conduct would cause emotional distress; (2) the conduct was outrageous, intolerable, and contrary to the generally accepted standards of decency and morality; (3) an approximate causal relationship existed between the conduct and the distress; and (4) the resulting emotional distress was severe.

15

Womack v. Eldridge, 210 S.E.2d 145, 148 (Va. 1974).  Defendant argues that plaintiff has failed to state a plausible claim for intentional infliction of emotional distress against IKEA because her allegations do not make out a plausible claim of outrageous conduct.  [Dkt. No. 11] at 18.

As courts in this district have recognized, "courts applying Virginia law have regularly recognized that it is especially difficult to establish [intentional infliction of emotional distress] in the employment context." Ainsworth v. Loudon Cnty. Sch. Bd., 851 F. Supp. 2d 963, 982 (2012) (dismissing intentional infliction of emotional distress claim based on plaintiff's claims that supervisors branded her a "problem," criticized her work, and treated her in a negative manner).  That plaintiff was terminated, or that plaintiff experienced any of the actions alleged in the Complaint, is insufficient as a matter of law to equate to extreme or outrageous conduct sufficient to permit this claim to go forward.  Under Virginia law, "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" can the element of "outrageous" conduct be met. Harris v. Kreutzer, 271 Va. 188, 2014 (2006). Accordingly, Count Twelve will be dismissed.

On October 15, 2024, after defendant filed its Reply brief and without first obtaining permission from the Court, plaintiff filed an amended opposition to the Motion to Dismiss, correcting one date listed in Count Twelve and adding three sentences describing the harm caused under Count Twelve. See [Dkt. No. 18].  On October 21, 2024, defendant filed a Motion to Strike the amended opposition, correctly arguing that it was filed in violation of this Court's Local Rule 7(F)(1), which allows sur-replies only with court permission.  [Dkt. No. 19]. Although plaintiff's filing was improper, the Court has considered it and finds that the

16

amendments do not change the Court's decision.  Accordingly, defendant's Motion to Strike will be denied.

### III. CONCLUSION

For all the reasons stated above, defendant's Motion to Partially Dismiss Plaintiff's Complaint, [Dkt. No. 10], will be granted and its Motion to Strike, [Dkt. No. 19], will be denied by an Order that will accompany this Memorandum Opinion.

Entered this 23rd day of October, 2024.

Alexandria, Virginia

                                                                /s/

                                                    Leonie M. Brinkema
                                                    United States District Judge

17